UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

DAVID RUNNINGHAWK,

        Plaintiff,

v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

        Defendant.

Case No. 3:15-cv-01495-AA

OPINION AND ORDER

Tim Wilborn
Wilborn Law Office, P.C.
P.O Box 370578
Las Vegas, NV  89137
    Attorney for Plaintiff

Billy J. Williams
United States Attorney
Janice E. Hebert
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902

1 - OPINION AND ORDER

Thomas M. Elsberry
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, WA 98104-7075
    Attorneys for Defendant

AIKEN, Judge:

Plaintiff filed suit pursuant to the Social Security Act (the Act), 42 U.S.C. § 405(g), to obtain judicial review of the Commissioner's denial of his application for disability insurance benefits (DIB). Plaintiff argues that the case should be remanded for an award of benefits, or, alternatively, for further proceedings. After review of the record and the parties' submissions, the decision of the Commissioner is reversed and remanded for further proceedings.

## BACKGROUND

On June 29, 2010, plaintiff filed an application for DIB, alleging disability as of May 10, 2010. Tr. 37. His application was denied initially and on reconsideration. On June 10, 2013, plaintiff and a vocational expert (VE) appeared and testified before an Administrative Law Judge (ALJ). Tr. 61-111. On August 5, 2013, the ALJ issued a decision finding plaintiff not disabled within the meaning of the Act. Tr. 34-60. The Appeals Council denied plaintiff's request for review, rendering the ALJ's decision as the final decision of the Commissioner. Tr. 1-7. Plaintiff now seeks judicial review.

Born in 1961, plaintiff was forty-eight years old as of the alleged onset date of disability, with a high school education and past relevant work as a brick mason. Tr. 52. He alleges disability since May 10, 2010 due to epilepsy, seizures, migraine headaches, and back and shoulder pain.

2 - OPINION AND ORDER

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotations omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## COMMISSIONER'S DECISION

The Commissioner evaluated plaintiff's allegation of disability pursuant to the relevant five-step evaluation process. *See* 20 C.F.R. § 404.1520(a)-(g).

At step one, the ALJ found that plaintiff had not engaged in "substantial gainful activity" since the alleged onset date of disability. Tr. 40; 20 C.F.R. § 404.1520(b).

At steps two and three, the ALJ found that plaintiff has severe impairments of degenerative disc disease, seizures, and headaches, but that plaintiff's impairments did not meet or equal the severity of a listed impairment which is considered "to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." Tr. 40-42; 20 C.F.R. § 404.1525(a); *id.* 404.1520(c),(d).

The ALJ then assessed plaintiff's residual functional capacity (RFC) and found that plaintiff could perform light work, with limitations on balancing, stooping, kneeling, crouching,

3 - OPINION AND ORDER

crawling, and climbing. Tr. 42; 20 C.F.R. § 404.1520(e). The ALJ also found that plaintiff "should avoid even moderate exposure to hazards such as heights and dangerous moving machinery." Tr. 42. Based on these findings, the ALJ found that plaintiff could not perform his past relevant work at step four. Tr. 52; 20 C.F.R. § 404.1520(f).

The ALJ proceeded to step five, where the burden of proof shifts to the Commissioner to demonstrate that the claimant is able to perform work that exists in the national economy, after taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). Relying on the testimony of the VE, the ALJ found that plaintiff could perform other work as a mail sorter, small product assembler, and office helper. Tr. 53. Accordingly, the ALJ found plaintiff not disabled under the Act.

## DISCUSSION

Plaintiff argues that the ALJ erred by failing to find that his seizure disorder met or equaled listing 11.03. Plaintiff also contends that the ALJ erred by rejecting the opinions of two treating physicians, plaintiff's testimony, and the statements of twenty-two lay witnesses, including plaintiff's wife. As a result, plaintiff maintains that the ALJ's RFC assessment is invalid and that he should be deemed disabled under the Act.

The listings identify impairments that are considered presumptively disabling. *See* 20 C.F.R. §§ 404.1520(d), 404.1525(a). A claimant may establish disability at step three by showing that a severe impairment meets the criteria for a listing, or that the impairment is accompanied by symptoms that are equal in severity to those described in a listing. *Id.* § 404.1526(a). In deciding whether a claimant's impairment meets or equals a listed impairment, the ALJ must provide more than a perfunctory analysis of the listing and must discuss the pertinent medical evidence.

*Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001) ("An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment. A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not do so").

To meet listing 11.03 for non-convulsive epilepsy, a claimant's impairment must be "documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment." 20 C.F.R. § 404, Sbpt. P, Appx. 1, § 11.03. The seizures must include "alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day." *Id.* The record must include "at least one detailed description of a typical seizure," and the "testimony of persons other than the claimant is essential for description for type and frequency of seizures if professional observation is not available." *Id.* § 11.00A. A description from a third party such as a family member is acceptable. *Id.*; SSR 87-6.

In this case, the record reflects that plaintiff suffered three grand mal seizures in the presence of medical providers in May 2011 and October 2012. *E.g.*, Tr. 400-01, 409, 493, 852-53. I find it unclear whether plaintiff alleges additional grand mal seizures. Plaintiff and his wife also described other seizures, dubbed "pseudoseizures," that plaintiff experiences several times per week and sometimes per day. Tr. 70-71, 253, 305-06. Plaintiff and his wife describe these seizures as involving lip-smacking, staring "into space," slow and slurred speech, and occasional jerking head movements. They also state that he experiences severe anxiety, fatigue and confusion afterward. Tr. 71, 253, 305. Medical providers and family members have also

witnessed plaintiff's pseudoseizures. *E.g.*, Tr. 306, 786-88, 817, 824.[1] Dr. Cabahug, a treating neurologist, opined that plaintiff's severe anxiety triggers his pseudoseizures. Tr. 483, 487, 654.

The ALJ found plaintiff's seizure disorder to be severe and imposed certain functional limitations imposed by Dr. Cabahug. Tr. 46. However, the ALJ found that plaintiff's seizure disorder did not meet the listings, stating, "I have reservations about the credibility of reporting concerning the frequency of the seizures and conclude that the severity of the claimant's seizures does not meet or medically equal the criteria of section 11.02 or 11.03." Tr. 42. The ALJ made no other findings at step three.

Later in the decision, the ALJ found that the record included "some inconsistencies regarding the frequency of seizures reported." Tr. 44. Specifically, the ALJ noted that treating neurologist Dr. Milford reported that plaintiff had daily seizures, while Dr. Cabahug reported that plaintiff had seizures at least three to five times per week; the ALJ found that the differing reports suggested that "these providers were given conflicting information." Tr. 44, 648-655. The ALJ also found that a March 2012 medical report of pseudoseizures two or three times per day conflicted with plaintiff's testimony of seizures three or four times per week. Tr. 44, 70-71, 817. Similarly, the ALJ rejected plaintiff's wife's statements regarding the frequency of his seizures, finding them inconsistent with plaintiff's reports. Tr. 49. In other words, the ALJ rejected each and every opinion, report, and statement regarding the frequency of plaintiff's seizures and cursorily found that plaintiff's seizures did not meet listing 11.03; the ALJ did so without resolving the noted inconsistencies or making factual findings as to the frequency or severity of plaintiff's seizures.

---

[1] Page 824 of the transcript of record is the first page of a medical report dated March 24, 2012; page 817 is the second page of the same report.

6 - OPINION AND ORDER

Likewise, the ALJ did not discuss or explain why the combined effects of plaintiff's seizures, headaches, and anxiety did not equal listing 11.03. In particular, the ALJ failed to consider the effects of plaintiff's pseudoseizures and discounted their severity. In finding plaintiff's seizures not disabling, the ALJ noted that Dr. Cabahug attributed plaintiff's pseudoseizures to anxiety, and that medical reports similarly indicated that plaintiff's seizures were a "form of pseudoseizure or conversion reaction rather than a grand mal seizure." Tr. 44-45. The ALJ further discounted the effects of plaintiff's pseudoseizures when she noted that a reviewing physician did not consider evidence of plaintiff's pseudoseizures: "I doubt that knowing the majority of seizures were pseudoseizures rather than epileptic seizures would lead the doctor to opine a more restrictive functional capacity." Tr. 46.

However, the ALJ is not a medical expert, and in making this finding, the ALJ improperly substituted her own interpretation of the medical evidence for the opinion of a medical professional. *Tackett v. Apfel*, 180 F.3d 1094, 1102-03 (9th Cir. 1999); *Jackson v. Comm'r Soc. Sec. Admin.*, 2016 WL 1670963, at *4 (D. Or. Apr. 26, 2016) ("It is error for an ALJ to substitute his own judgment for that of a medical professional."). Moreover, in dismissing plaintiff's pseudoseizures and their severity, the ALJ considered the record in piecemeal fashion, cherry-picking evidence that supported the denial of benefits, rather considering the evidence of record as a whole. *See Leingang v. Colvin*, 2015 WL 4623696, at *8 (E.D. Wash. Aug. 3, 2015) ("Moreover, the ALJ rejected the various medical opinions piecemeal, without considering the fact that their consistency with each other should have bolstered the reliability of the whole.").

The Commissioner likewise discounts plaintiff's pseudoseizures, remarking that plaintiff's own recitation of the record describes only three seizures in a two-year period. Def.'s Brief at 4. While that may be true with respect to plaintiff's grand mal or convulsive seizures, Tr. 400-15, 846-54, the record reflects reports of frequent pseudoseizures witnessed by plaintiff's wife, his family members, and medical providers. Tr. 253, 305-06, 783-87, 817, 816, 824. Moreover, medical records explain that pseudoseizures "look a lot like epileptic seizures," with "loss of consciousness" or "twitching or jerking." Tr. 788. Though "pseudoseizures originate in the mind, they are real to the person having the episode. They can be frightening and cause the patient to feel out of control." Tr. 788.

In sum, plaintiff's pseudoseizures are documented by medical reports and third-party witnesses, and two treating physicians found numerous limitations as a result of the seizures. Yet, based on this record, it is unclear whether and to what extent the ALJ took plaintiff's pseudoseizures into account when determining whether his seizures met or equaled listing 11.03. Moreover, I find significant the ALJ's failure to make factual findings as to the severity and frequency of plaintiff's seizures. If plaintiff's pseudoseizures occur as described more than once per week, he could be presumptively disabled under listing 11.03; if plaintiff's pseudoseizures occur more than twice per month, he is unable to sustain competitive employment according to the VE's testimony. The VE testified that employers in the competitive workplace would not tolerate frequent disruptions or more than two absences per month. Tr. 108-09.

As a result, the ALJ's cursory statement at step three "is inadequate and warrants remand." *Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004) ("All that the ALJ ever said is that he disbelieved Barnett's testimony concerning the number of seizures she was experiencing;

he never affirmatively determined how many seizures he believed Barnett actually experienced. And, thus, we cannot discern if the ALJ ever considered whether Barnett's impairment equals Listing 11.03 despite her assumed lack of credibility.").

The ALJ also rejected the opinions of plaintiff's treating neurologists, Drs. Cabahug and Milford in finding plaintiff's seizures not disabling. Dr. Cabahug completed a seizure questionnaire and indicated that plaintiff experienced generalized epileptic and pseudoseizures, and that plaintiff's severe anxiety triggered his pseudoseizures. Dr. Cabahug opined that plaintiff suffered from seizures approximately three to five times a week, if not more; that plaintiff experiences confusion, exhaustion, irritability, muscle strain, and paranoia for several minutes after a seizure; and that plaintiff's medication caused lack of alertness. Tr. 652-54. Dr. Cabahug opined that plaintiff would require extra supervision at a workplace, his seizures likely would disrupt coworkers, and he likely would be absent from work more than four days per month. Tr. 653-55.

The ALJ accepted certain limitations noted by Dr. Cabahug in earlier medical reports and gave them "significant weight." Tr. 46. At the same time, the ALJ rejected Dr. Cabahug's opinion that plaintiff likely would be absent from work more than four days per month and could not return to work. The ALJ found that the ability to work is an issue reserved to the Commissioner and that Dr. Cabahug's opinion on plaintiff's likely absences was "mere speculation," with no supporting rationale. Tr. 47. The ALJ did not discuss Dr. Cabahug's statement that plaintiff suffered from pseudoseizures three to five times per week, other than previously noting the inconsistent reports of seizure frequency. The ALJ also failed to address the limitations noted by Dr. Cabahug that supported his opinion, including confusion,

9 - OPINION AND ORDER

exhaustion, irritability, muscle strain, paranoia, and lack of alertness caused by plaintiff's seizures and medication. Tr. 653-54. The ALJ also failed to discuss Dr. Cabahug's opinion that plaintiff's seizures would be disruptive to co-workers and his anxiety would prevent him from performing even a "low-stress" job. Tr. 654-55. Given that Dr. Cabahug was a treating neurologist who saw and examined plaintiff on several occasions, the ALJ did not provide legally sufficient reasons to discount Dr. Cabahug's opinion regarding the frequency of plaintiff's seizures or their effect on plaintiff's ability to work.[2] *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (an ALJ must provide either clear and convincing or specific and legitimate reasons to reject the opinion of a treating physician, which is generally given more weight than that of a non-treating physician).

Dr. Milford likewise answered a seizure questionnaire and indicated that plaintiff had daily seizures and experienced confusion, exhaustion, and irritability afterward. Like Dr. Cabahug, Dr. Milford stated that plaintiff's seizures likely would disrupt co-workers and require additional supervision of him, and that plaintiff could not sustain employment. Tr. 648-51. The ALJ rejected Dr. Milford's opinion primarily because he had treated plaintiff for only two months and had not witnessed a seizure. The ALJ further stated that the evidence did not support the frequency of seizures Dr. Milford reported. Tr. 47. Even if Dr. Milford did not witness a seizure, other medical providers and family members did; and the regulations accept reports from third parties other than medical providers. 20 C.F.R. § 404, Sbpt. P, Appx. 1, § 11.00A; SSR 87-

---

[2] The ALJ also noted that the signature on Dr. Cabahug's seizure report looked different from his signature on other medical reports. Tr. 47. However, no evidence suggests that Dr. Cabahug did not complete the seizure report, and another medical report by Dr. Cabahug includes the same signature. Tr. 498. To the extent the ALJ had concerns about the authenticity of the report, she had a mechanism to address it by contacting Dr. Cabahug for confirmation or clarification. *E.g.*, 20 C.F.R. § 404.1520b(c).

6. Further, contrary to the ALJ's statement, the record includes reports of daily pseudoseizures. Tr. 305-06, 816-17, 824, 846-54.

Plaintiff maintains that if the court credits the opinions of Drs. Cabahug and Milford, the record establishes that plaintiff has pseudoseizures more than once per week and that his seizures, combined with his related headaches and anxiety, equal if not meet listing 11.03. Accordingly, plaintiff argues that the case should be remanded for benefits. However, the record contains various and differing reports about the frequency of plaintiff's pseudoseizures, and it is not this court's role to resolve inconsistencies in the record. While I note that even a conservative estimate of plaintiff's pseudoseizures would render plaintiff unable to sustain full-time employment according to the VE, I cannot find that "the record has been fully developed and further administrative proceedings would serve no useful purpose." *Dominguez v. Colvin*, 808 F.3d 403, 408 (9th Cir. 2015).

Plaintiff also argues that the ALJ erred by finding him not credible and by rejecting the lay statements of twenty-two witnesses, including plaintiff's wife. The ALJ found plaintiff's allegations less than credible because of his daily activities, his one-time use of a power saw, and the varying reports of his seizures. Tr. 44-46. Plaintiff does not allege that his headaches and seizures prevent him from doing any and all activity, and his daily activities are not inconsistent with his allegations. *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (a claimant need not be "incapacitated" to establish eligibility for benefits); *Tate v. Apfel*, 167 F.3d 1191, 1196-97 (8th Cir. 1999) ("[C]laimants may have a disabling seizure disorder and still be able to perform some daily home activities."). As plaintiff points out, migraines and twice weekly seizures would not necessarily interfere with watching his daughter play softball, occasional gardening or

volunteer work, but they would interfere with sustained employment under the listings and according to the VE. Tr. 46, 108-09. Further, plaintiff's one-time and admittedly ill-advised use of a saw does not justify the complete rejection of his seizure allegations. Tr. 45, 90. Finally, as explained above, it is unclear whether the ALJ considered plaintiff's pseudoseizures when rejecting his allegations and the lay witness statements. Therefore, reconsideration of this evidence is appropriate on remand.

On remand, the ALJ shall consider the medical record as a whole and further develop the record as necessary. The ALJ shall make findings regarding the frequency and severity of plaintiff's seizures and related symptoms, including pseudoseizures and migraine headaches, and their effect on plaintiff's ability to work. The ALJ also shall reconsider plaintiff's testimony and the lay witness statements, particularly those of plaintiff's wife.

## CONCLUSION

The ALJ's finding that plaintiff was not disabled under the Act is not supported by substantial evidence in the record. Accordingly, the decision of the Commissioner is REVERSED and REMANDED for further administrative proceedings.

IT IS SO ORDERED.

DATED this 29 day of September, 2016.

Ann Aiken
United States District Judge